FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Southern Division

98 NOV -2 AM 10: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| MARTIN SCOLES, | ) |
| Plaintiff, | ) No. CV-97-P-00777-S |
| -vs.- | ) |
| CREST CADILLAC OF BIRMINGHAM, et al., | ) |
| Defendants. | ) |

ENTERED

NOV 0 2 1998

## MEMORANDUM OPINION

The defendants, Scoles Cadillac of Nashville, Inc. and Crest Cadillac of Birmingham, Inc., filed a Motion for Summary Judgment with the court on May 28, 1997. After hearing oral argument in chambers on September 17, 1997, the court took the motion under submission. It is the defendants' position that the plaintiff's claims in this proceeding are barred under the doctrine of res judicata because they constitute compulsory counterclaims that should have been asserted in a prior bankruptcy adversary proceeding. The plaintiff asserts that his current claim for "bonus" monies owed under his previous employment contract should not be dismissed because the claim could not have been brought in the prior proceeding and does not arise from the same operative facts. For the reasons expressed below, the defendants' motion is due to be GRANTED.

## Facts[1]

Crest Cadillac (formerly known as Scoles Cadillac of Birmingham, Inc.) and Scoles Cadillac of Nashville were incorporated by Martin Scoles (the plaintiff) and Dr. Harold Buttery in 1982. Scoles acted as president and general manager of the two car dealerships from 1986 until his employment ended in 1990. Scoles and Buttery were also stockholders of these two entities. In May of 1986, Scoles and Buttery executed a stockholder and compensation agreement that set forth Scoles's compensation package for the Birmingham dealership. Under the agreement, Scoles was to receive $5,000.00 per month plus and an annual "bonus" in an amount equal to 25% of the dealership's net income. In July of 1986, Scoles and Buttery executed a virtually similar agreement with regard to the Nashville dealership.

According to the defendants, from 1987 through February of 1990, Scoles embezzled funds from the Birmingham and Nashville dealerships. Scoles was confronted with these allegations during a meeting in February of 1990 and resigned his position at that time. During the years Scoles worked for the two dealerships (1986 to 1990), the dealerships paid him the agreed upon salary of $5,000.00 per month. However, during those years, the dealerships did not disburse the annual bonuses. Instead, with Mr. Scoles's consent, the bonuses were retained by the corporations and recorded on the corporations' books and tax returns.[2]

In May of 1991, Mr. Scoles filed a Chapter 11 Petition in the United States Bankruptcy Court for the Middle District of Tennessee. During the pendency of the Chapter 11 case, Mr.

---

[1] The facts herein are viewed in the light most favorable to the plaintiff as the non-moving party.

[2] Mr. Scoles paid income tax on the undisbursed bonuses. The dealerships also paid Scoles interest on the amounts owing for the bonuses.

2

Scoles's former employers (the two defendants in this case) filed adversary proceedings against him in the bankruptcy court. The adversary complaints sought recovery for "improper advances or loans" to Mr. Scoles and several of his personal entities and included claims for conversion, embezzlement, conversion of corporate opportunities, and breaches of fiduciary obligations. Both dealerships sought to have the alleged debts excepted from any bankruptcy discharge obtained by Mr. Scoles and sought the entry of a monetary judgment. According to the defendants, during a pre-trial conference in the adversary proceedings, counsel for Mr. Scoles stated that he would potentially raise a counterclaim for salaries and bonuses owed. The affidavit of the attorney for the dealerships, Lee Benton, states that the bankruptcy judge gave Mr. Scoles two weeks to amend his answer and set forth any counterclaim that he wished to file. The evidence shows that no amended answer asserting such counterclaim was ever filed.

The parties eventually entered into a settlement agreement that purported to resolve all claims, past, present, and future. The bankruptcy court was notified of the settlement and entered an Order and Judgment in favor of the dealerships for $1,000,000.00 that was to be non-dischargeable in bankruptcy. Under the terms of the settlement, executed on October 26, 1992, Mr. Scoles agreed to release all claims for compensation against both dealerships in exchange for their agreement to hire him as a consultant and forgive the $1,000,000.00 judgment. However, complete fulfillment of the settlement agreement was contingent on the successful negotiation of a purchase price for the dealerships' stock. The agreement provided that if the negotiations for the stock purchase was unsuccessful, the settlement agreement would become null and void, *except* that the $1,000,000.00 judgment would remain in full force and effect. The stock purchase was unsuccessful and the settlement was voided in January of 1993.

3

In December of 1994, Mr. Scoles filed suit against Scoles Cadillac of Nashville in the Circuit Court for Broward County, Florida. Mr. Scoles also filed suit against Scoles Cadillac of Birmingham in the United States District Court for the Southern District of Florida. Both cases were subsequently dismissed without prejudice for lack of personal jurisdiction. On February 16, 1996, Mr. Scoles filed suit against both dealerships in the United States District Court for the Middle District of Tennessee. The dealerships moved to dismiss for lack of personal jurisdiction, of in the alternative, to transfer venue pursuant to 28 U.S.C. § 1040(a). Afer holding an evidentiary hearing, the court ruled that Tennessee had personal jurisdiction over the dealerships but transferred the case to the Northern District of Alabama for the convenience of the parties and the witnesses.

### Analysis

The doctrines of res judicata and collateral estoppel are related concepts that preclude parties from re-litigating issues or claims in a subsequent action. The primary difference between the two concepts lies in the requirement of "actual litigation." While collateral estoppel requires that the identical issue be actually litigated, the concept of res judicata does not add such an element. See I.A. Durbin, Inc. v. Jefferson Nat'l Bank, 793 F.2d 1541, 1549 (11th Cir. 1986). Instead, the main concern in res judicata determinations is whether the claims "could have been brought" in the previous action. Manning v. City of Auburn, 953 F.2d 1355, 1358 (11th Cir. 1992). Because the underlying adversary proceeding in this case was not actually litigated, only the defense of res judicata is available.

Under Alabama law, four elements are necessary in order for the doctrine of res judicata to apply: "(1) a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3)

4

with substantial identity of parties, and (4) with the same cause of action presented in both suits." Manning, 953 F.2d at 1358. The first three elements are clearly met in this case. A final judgment was entered by the bankruptcy court on the merits of a case involving Mr. Scoles and the two Cadillac dealerships. Regardless of the fact that the settlement agreement between the parties eventually fell through, the court's judgment of $1,000,000.00 remained valid and enforceable. As a result, the only remaining point of contention concerns the fourth element, which requires a finding that the present cause of action is the same as that involved in the earlier lawsuit. Based on the evidence in this case, the court finds that the fourth element has been met.

In the adversary proceeding before the bankruptcy court, the defendants alleged that Mr. Scoles engaged in embezzlement, conversion, and other various activities. The defendants filed the adversary suit in 1991, well over a year after Mr. Scoles terminated his employment. At the time of the adversary proceeding, Mr. Scoles was undoubtedly aware that his bonuses remained unpaid. In fact, Mr. Scoles's attorney apparently informed the court of his desire to file a counterclaim for the bonus money allegedly owed. Although the court granted two weeks leave to file the counterclaim, no action was taken by Mr. Scoles to institute any such claim. Because Mr. Scoles had the opportunity in the earlier lawsuit to litigate his claim for bonus money owed, but did not act on that opportunity, any future claims relating to business relationship between Mr. Scoles and the defendants are barred by res judicata. See Lary v. Ansari, 817 F.2d 1521 (11th Cir. 1987). Therefore, the present action by Mr. Scoles against the defendants is barred and the defendants' summary judgment motion is due to be GRANTED.

Dated: _Nov, 2_, 1998.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
    F. Dulin Kelly
    Clinton L. Kelly
    Lee R. Benton

6